The pages on our calendar for argument this morning is numbers 21-562 and 21-572 United States v. Torres. Mr. Wilson? I'm just making sure that the government is ready. You all set? Good morning. May it please the court, my name is Charles Wilson. I'm here from the Federal Defender's Office in Connecticut. I represented Jonathan Torres at his two sentencings with Judge Thompson. This appeal arises from those, in particular the discussion around whether the judge should rely on Fernandez to do either some sort of departure or to at a minimum give some consideration to the guideline range that was forecasted in the plea agreement. Mr. Wilson, we're on abusive discretion review, aren't we? That is correct, Your Honor. We're challenging the procedural reasonableness of it. What procedural error did the district court make? Are you saying he had an obligation under Fernandez to depart, notwithstanding all the language in the plea agreement and all of the warnings that the judge gave your client at sentencing and entering the plea? There were a lot of warnings and stuff in the plea agreement. And then the plea transcript certainly has a lot of the usual stuff about, you know, the sentence might be different than we expect. The real issue here, though, is Judge Thompson appears to indicate that his discretion on this subject, is limited by the fact that the government was not assenting to there being some sort of departure. I think you said that he did not give adequate weight to the fact that he was entitled to under Fernandez to consider a departure and that he gave too much weight to the government's decision not to advocate for a return to the initial sentencing guideline range. But I don't see anything in the record that suggests he felt he was limited in any way. He gave an expansive discussion of the reasons why he thought that the sentence he was selecting was appropriate. What signals that he felt wrongly limited in some way? Sure. I guess I would disagree with a little bit of Your Honor's question. It wasn't that Judge Thompson felt like he couldn't give enough weight based on the position the government was taking. The transcript would indicate that he views Fernandez as a departure that he can only do when the parties are in agreement. And because of that... I don't think he said that. I think that he said that he noted that the government was not advocating for a return to the prior... In selecting a sentence, and there's nothing that prevented him from selecting a sentence. Your client was warned that even with the initial plea agreement, that that range wouldn't necessarily control what the district court did. And there was, in fact, a recalculation of the criminal history. Well, Your Honor, as the record indicates, he spends time to get the plea agreement. He pulls up that language in the plea agreement that says that the parties can argue in favor of any recalculations that were done based on the pre-sentence report. But then Judge Thompson does talk about the necessity of there being mutual assent in order for Fernandez to apply. Fernandez is somewhat of an old case at this point. It's well before Booker. Back when we didn't have variances and non-guideline sentences, everything had to be pigeoned in as a departure. And the point that was attempted to be made before Judge Thompson by me was that while the government was entitled to disagree and to take the position that it was, I wasn't claiming any sort of bad faith by Attorney Leeming whatsoever, but that the court still had the guidance of Fernandez, which says that plea agreements are a good thing and that we should give them weight and that obviously the Sentencing Reform Act wasn't intended to do anything to minimize that. I'm sorry, Your Honor. We have a judge here who made clear that he was not going to depart or vary on any ground because of how he perceived the seriousness of the crime and the need for specific deterrence, which he concluded required a sentence at least as severe as the last time your client was involved in criminal conduct. He had originally been sentenced to 86 months. He'd gotten an amendment reduction to 70, and he thought that he had to be given at least 70 this time too. Why isn't that all a proper exercise of the district court's discretion and amply supported by the record here? Your Honor, Judge Thompson explains things pretty clearly. I'm not disputing that. He highlights, you know, the thing that probably was most egregious to him was that Mr. Torres committed the drug dealing while he was out on supervised release but also had already been to court for having had the gun and had some additional restrictions put on him. So Judge Thompson makes a good record. That's not my point. And perhaps that's not why my substantive reasonableness argument about the sentence doesn't really have any teeth to it. The point is that in getting there, the framework that he works with, he misperceives. I think the record supports that he misperceives the scope of his discretion when it comes to the idea of what do we do with plea agreements when things don't turn out as the plea agreement forecasted. Well, the government, and I think this is the part you're relying on to make your procedural error argument, is his statement, we don't have mutual intent here. That's the language, right? But the government points out or puts that comment in context. And it seems that in context, he's just basically saying there was no basis for Fernandez's departure to give effect to any intent because it was clear from the plea agreement that everybody had been advised that this was not binding by any means. Why is that not an appropriate way to look at this? Well, the mutual intent part goes to two aspects. On the plea agreement, in terms of reading the language of the plea agreement, I'm stuck. It does have that language in there that we can do things and take different positions if the circumstances change. I hear that. But there's also the mutual intent part where we get to sentencing, and even though that language may be in the plea agreement, we can still have an agreement that judge, you should use the range, we would like you to use the range, probably the better way to phrase it, we would like you to use the range that we have in the plea agreement because we negotiated it and it was a hard negotiation and we think it's appropriate to the offense. So there's two aspects to that mutual intent part. The government wasn't agreeing to that. So you don't have that mutual intent at that point. But you're saying, oh, that suggests he didn't think he could do it. And I'm saying to you, to the contrary, he's saying, this isn't a case that warrants my considering doing it because we need specific deterrence here and this crime is quite serious. So why should I conclude that there was an error here? Because the error is still procedural. Would the outcome, would the end point be the same? I don't know. What is the error? I mean, he's saying that there's no mutual intent here and I wouldn't do it in any event because of these circumstances. So what is the procedural error? I guess I'm focused on that first point, the necessity for a mutual intent. He does make a good record. He never said it was necessary. He was pointing out that it didn't exist here, which might have given him more reason to consider it, but he didn't even have that here. I think the record reads as he felt limited by the fact that the government was going to do it. Would he have gotten to the same numbers anyways? Part of the problem is, one, I don't think it's clear because if we had started with consideration of the numbers from a lower standpoint. What's your burden on that? Because generally we do not assume that judges do not understand their powers. And I'm not sure what here would make the court think that he did not. I agree that that's generally the approach. And frankly, perhaps I would be less inclined to have brought the appeal had we not even really discussed it. You know, had the decision just been, this is what I think the sentence should be. I found the guidelines where it is. One of the things I'm drawn to is in the Berg case, which is a summary order, so not controlling, but one of the reasons the panel didn't seem to get to the issues fully was that the issue is unreviewable unless a court misunderstood its authority to do something about it. In that case, and I don't know why, but in that case, the appellant didn't seem to be challenging pretty much anything other than we should just always go to what the plea agreement says. There was no substantive reasonableness challenge. There was no procedural reasonableness challenge. But the court went on to say, he said, I don't think it matters in the end, but even if the proper framework were Fernandez acknowledging thus his authority to depart, the court has discretion whether to exercise it, has to decide whether to exercise its discretion to make a departure under the guidelines. And then he reviews the factors that Judge Ratchet outlined. So he's deciding maybe we could do a Fernandez kind of departure and maybe we couldn't. And even if we, even if I believed that I clearly could, I wouldn't. So it's pretty clear that the result doesn't change in any event, even if there was some misunderstanding. I just know from sentencing that if we start with lower numbers, it's harder to get higher. And if the numbers are already up there, it's very easy to give a sentence at that point. And that's really what I find to be kind of the crux of procedural error, which is there was some misperception or something greater perhaps about what the judge can do. But it's also true that the original guidelines range was miscalculated. It was based in part on a pretty reasonable error by the government and myself. We relied on a prior pre-sentence report, which is a pretty discreet issue. Nonetheless, it was wrong. So nonetheless, it was incorrect. But I think that's a narrow aspect of this case that could provide some avenue for further review or consideration by Judge Thompson. I see that my time is up, and I know I have some time for rebuttal. Thank you very much. Yes. Yes, you have three minutes for rebuttal. We'll go from the government. Good morning, Your Honors, and may it please the Court. My name is Catherine Boyles. I'm appearing on behalf of the United States. As this Court has intuited, this Court should affirm the District Court's judgment for two primary reasons. First, the District Court correctly concluded that Fernandez was not the appropriate framework with which to consider the defendant's request for a below-guideline sentence in light of the specific reservation of rights in the plea agreement. And second, the District Court did fully understand its authority to depart or vary under the guidelines, and instead, in this case, was well within its discretion to simply decline to depart or vary, regardless of whether or not Fernandez applied. So turning to that first point, the District Court did correctly opine that Fernandez is not the appropriate framework to consider this kind of case. Fernandez, a case from 1989, provides that a court may depart from the guideline sentence in order to give effect to a plea bargain. However, the Court was also clear in articulating that District Courts retain their broad discretion to deny requests for such departures from the guidelines. The District Court was free to look at all the circumstances, look at the relatively minor error that was made in the criminal history point assignment, and if the government had urged it, he could have adopted the sentencing guideline range under Fernandez that was agreed to in the plea agreement. Isn't that right? Your Honor, I don't quite agree, because I think as the Court explained and as trial counsel explained, Fernandez, rather, the request for the departure might have been better viewed as a variance, and that's how Judge Thompson understood this case, because of the language of the plea agreement. It was about the mutual assent. The conversation about mutual assent was the mutual assent at the time of the plea. And so here, absolutely, the Court had the discretion to vary, and could have considered whether or not the government was assenting as sort of part of its holistic analysis of whether or not a departure or a variance was advisable in this case, but the Court simply declined to do so. And as has been highlighted previously in this argument, sort of turning to the second point here, is that really, even if there was some kind of procedural error, and again, the government maintains that there was no procedural error, but even if there was, any such error was harmless, as the Court repeatedly reiterated that he was comfortable with the sentence that he ultimately imposed, based on the whole set of circumstances of this defendant, and particularly what the Court called the defendant's egregious conduct, having gone out and committed additional narcotics offenses while he was not only on supervised release, but had already been brought in, brought before the District Court, for modifying those conditions. He was put on home detention with GPS monitoring, and instead took advantage of an opportunity to go to what was his place of employment, to continue selling fentanyl pills. So for all of those reasons, the District Court was A, correct in saying that Fernandez is not the right framework for this particular kind of case, because of the language specifically about the criminal history category calculation, and even if the Court made any error in suggesting that Fernandez was not the appropriate framework, the Court makes it clear that any such error was harmless, because he thinks that 70 months was the correct sentence, regardless of any request for a departure or a variance. If the Court has no further questions, the government would rest on its briefs. Very good. Thank you. Just for the record and for the reference of the Court, pages 75 and 76 of the addendum is probably the lengthier explanation of the Court's view about when it can use a Fernandez departure, which includes the language, I could depart because the parties have expressed a mutual intent to stick with the initial assessment. I could. That's a Fernandez departure. So I would point that on the one key question that we seem to be discussing more this morning. On the other question, which is, you know, was he going to do it anyways? Was Judge Thompson going to do it anyways? He certainly was going to give him a significant sentence. I just don't know that we would have reached that point. If we have a range of 47 to 56, 56 plus 24, let's say he gives him a higher number on the violation, still gets you up in the 80s. You know, that's 81, which is obviously a very substantial sentence, close to what he would have gotten before. Would also recognize that, you know, the drug guideline ranges had changed and that his prior offense arguably was more serious because it involved a lot more heroin than the fentanyl that was involved. But, of course, today we all think about fentanyl and, you know, no one feels comfortable in that, plus we have a gun. So I just don't know, frankly, what Judge Thompson would have done if he knew that he had more authority. I'm sure he would have thought about it and investigated that. And that's what I'm asking for the opportunity to do. So unless the panel has any other questions, I'll wish you to stay safe. Thank you very much. Thank you. Thank you both. We'll reserve decisions.